# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR01-3038-MWB |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE** |
| MONTREAIL DEAN DUNGY, | |
| Defendant. | |

---

## TABLE OF CONTENTS

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  *A.  Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . . . 4
  *B.  Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  *C.  Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . 7
    *1.    Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *2.    Claims of ineffective assistance at issue here* . . . . . . . . . . . 10
      *a.    Witness selection* . . . . . . . . . . . . . . . . . . . . . . . . . 10
      *b.    Alibi defense* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      *c.    Juvenile bad acts evidence* . . . . . . . . . . . . . . . . . . 14
      *d.    Failure to request buyer-seller jury instruction* . . . . . . 14
      *e.    Proof of the drug at center of the conspiracy* . . . . . . . 15
      *f.    Sentencing stipulation* . . . . . . . . . . . . . . . . . . . . . 16
      *g.    Use of prior convictions* . . . . . . . . . . . . . . . . . . . . 18
      *h.    Appellate counsel* . . . . . . . . . . . . . . . . . . . . . . . . 19
    *3.    Perjured testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
  *D.  Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# *I. INTRODUCTION AND BACKGROUND*

On July 19, 2001, the United States Grand Jury for the Northern District of Iowa returned a three-count indictment against defendant Montreail Dean Dungy, charging him with conspiring to distribute crack cocaine, to possess with intent to distribute crack cocaine, and to manufacture crack cocaine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851; possessing cocaine with intent to distribute, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851 and, possessing with intent to distribute crack cocaine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851.

On November 2, 2001, the prosecution gave notice of its intent to seek enhanced penalties based on defendant Dungy's two prior felony drug convictions. On November 6, 2001, this case proceeded to trial before a jury. At trial, among other evidence, the prosecution called cooperating witnesses Ira Shivers, Mark Shivers, Ricky Fox, and Patrick Preston. Each named defendant Dungy as the source of their supply of crack cocaine. The prosecution also called Jeremy Altman and Teri Altman. Each testified that Dungy had sold Jeremy Altman cocaine at Teri Altman's home. Fort Dodge Police Officers Chuck Guthrie, Michael Boekelman and Dennis Mernka were also called by the prosecution to testify with regard to the investigation and execution of a search warrant at the residence of Teri Altman. Officers Boekelman and Mernka also testified about the results of a search of the residence of Sharon Altman. Fort Dodge Police Officer Ryan Doty was called by the prosecution to testify regarding the execution of a search warrant at defendant Dungy's residence. The prosecution also called defendant Dungy's aunt, Sharon Altman, to testify that Dungy lives next door to her and has often been to her house. She further testified that, on the morning of the day law enforcement officers

executed a search warrant at her home, she saw Dungy go upstairs in her house carrying a black bag. In addition, the prosecution offered the testimony of Officer Roger Timko of the Iowa Department of Public Safety, Iowa Division of Narcotics Enforcement, regarding drug trafficking. The prosecution offered an Iowa Department of Criminal Investigation's laboratory report on the analysis of the contents of packages found in Sharon Altman's home which indicated that the packages contained 547 grams of powder cocaine and 44 grams of crack cocaine.

Following a four-day trial, the jury convicted defendant Dungy of the conspiracy charge, but acquitted him of the other two charges. Prior to sentencing, the prosecution and defendant Dungy entered into a stipulation which called for defendant Dungy to be sentenced to 360 months imprisonment.[1] The court accepted the parties' stipulated sentence and accordingly sentenced defendant Dungy to 360 months imprisonment.

Defendant Dungy then filed a timely appeal of his sentence. On appeal, defendant Dungy raised the issues of whether the court erred in admitting evidence of his marijuana and ecstacy sale in violation of Federal Rule of Evidence 404(b), whether the prosecution produced sufficient evidence to support the conspiracy charge, and whether his counsel was ineffective. *See United States v. Dungy*, 51 Fed. Appx. 194, 194-96 (8th Cir. 2003). Defendant Dungy's appeal was denied. *See id*. at 196.

Pursuant to 28 U.S.C. § 2255, defendant Dungy filed his Motion To Vacate, Set Aside Or Correct Sentence which is presently before the court. In his § 2255 motion, defendant Dungy challenges the validity of his conviction and sentence on the ground of

---

[1]As part of the stipulation, the prosecution withdrew its notice of enhancement for one of defendant Dungy's two prior felony drug convictions. In return, defendant Dungy agreed to a four level increase for his role in the offense as well as agreeing to a limited appeal waiver. Sentencing Tr. at 3-7.

ineffective assistance of his trial, sentencing, and appellate counsel for the following reasons: (1) that his trial counsel was ineffective in failing to call certain witnesses; (2) that his trial counsel was ineffective in failing to present an alibi defense; (3) that his trial counsel was ineffective in failing to object to the introduction of certain bad acts which occurred when defendant Dungy was a juvenile; (4) that his trial counsel was ineffective in failing to request a buyer-seller jury instruction; (5) that his trial counsel was ineffective in failing to object to the lack of proof that the drug involved in the conspiracy was crack cocaine; (6) that his sentencing counsel was ineffective in failing to object to the sentencing stipulation; (7) that his sentencing counsel failed to object to his two prior felony drug convictions being used to determine his criminal history as well as for a § 851 enhancement; (8) that his appellate counsel was ineffective in failing to raise claims of ineffective assistance of trial counsel based on trial counsel's failure to call certain witnesses. Defendant Dungy also asserts that prosecution witness Jeremy Altman has recanted his trial testimony.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

The court must first consider the standards applicable to a motion for relief from sentence pursuant to 28 U.S.C. § 2255. Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to

4

> collateral attack, may move the court which imposed the
> sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

> Section 2255 relief is not available to correct errors
> which could have been raised at trial or on direct appeal,
> absent a showing of cause and prejudice, *United States v.
> Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71
> L. Ed. 2d 816 (1982), or a showing that the alleged errors
> were fundamental defects resulting in a complete miscarriage
> of justice. *See United States v. Smith*, 843 F.2d 1148, 1149
> (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1346 (2006). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, a "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Davis*, 506 F.3d 461, 463 (8th Cir. 2007) ("We review the district court's denial of § 2255 relief de novo.") and *United States v.*

*Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'"), *cert. denied*, 126 S. Ct. 2341 (2006) (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

## B. Evidentiary Hearing

The court notes that defendant Dungy requested an evidentiary hearing on his motion. "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *See* 28 U.S.C. §2255. In this case, the court concludes that no evidentiary hearing is required on any issue, because the record conclusively shows either that defendant Dungy's allegations, if accepted as true, would not entitle him to relief because he can demonstrate no prejudice or his allegations cannot be accepted as true because they are contradicted by the record.

## C. Ineffective Assistance Of Counsel

The underlying merits of all but one of defendant Dungy's claims lie in whether defendant Dungy can demonstrate ineffective assistance of his trial, sentencing or appellate counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of

7

Counsel for his defense." *U.S. Const. amend*. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Therefore, the court will address defendant Dungy's specific claims after briefly reviewing the standards for a claim of ineffective assistance of counsel.

### 1. Applicable standards

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *Ledezma-Rodriguez*, 423 F.3d at 836 (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423

F.3d at 877 (same).  Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693).  Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice."  *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)).  The court will now consider defendant Dungy's specific claims of ineffective assistance of counsel.

### 2. *Claims of ineffective assistance at issue here*

### a. *Witness selection*

Defendant Dungy contends that his trial counsel was ineffective because he failed to call witnesses who would have testified that defendant Dungy did not have a criminal confederation with Ira Shivers and Mark Shivers.  Defendant Dungy similarly asserts that his trial counsel was ineffective because he failed to interview and call as witnesses individuals who could have testified at trial regarding tensions between defendant Dungy and the Shivers, Ricky Fox and Patrick Preston.  Defendant Dungy contends that if these witnesses had been called to testify at trial they would have provided the jury with a motivation for the prosecution's witnesses to falsify their testimony.

A variation of this claim was raised and denied on direct appeal.  *See Dungy*, 51 Fed. Appx. at 196.  On direct appeal, defendant Dungy asserted that his trial counsel was ineffective because he failed to call three witnesses "who would have established his

innocence."[2]  *Id.*  The Eighth Circuit Court of Appeals concluded that defendant Dungy had not been prejudiced by his counsel's actions, observing:

> Dungy was not prejudiced by his attorney's failure to call three additional witnesses. Witness selections are left to counsel's judgment. *Hanes v. Dormire,* 240 F.3d 694, 698 (8th Cir. 2001). We will not second-guess counsel's judgment.

*Dungy,* 51 Fed. Appx. at 196.

It is well settled that a motion to vacate, set aside, or correct sentence by person in federal custody may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances.[3]  *See United States v. Wiley,* 245 F.3d 750, 752 (8th Cir. 2001) ("Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on  28 U.S.C. § 2255."), *cert. denied,* 122 S. Ct. 818 (2002); *Dall v. United States,* 957 F.2d 571, 572 (8th Cir. 1992) (claims introduced and decided on direct appeal may not be relitigated in a § 2255 motion to vacate); *see also Dupont v. United States,* 76 F.3d 108, 110-111 (6th Cir. 1996) ("A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances.") (quoting *United States v. Brown,* 62 F.3d 1418, 1995 WL 465802, at *1 (6th Cir.) (unpublished table decision), *cert. denied,* 516 U.S. 942 (1995)); *Giraldo v. United States,* 54 F.3d 776, 1995 WL 290354, at *2 (6th Cir.) (unpublished table decision) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was

---

[2]The Eighth Circuit Court of Appeals's decision does not identify who the three witnesses were or specifically what they were to have testified to at trial. *Dungy,* 51 Fed. Appx. at 196.

[3]An exception to this general prohibition exists only where the alleged errors constitute "fundamental defects that inherently result in a complete miscarriage of justice." *United States v. Manko,* 772 F.2d 481, 482 (8th Cir. 1985).

raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law."), *cert. denied*, 516 U.S. 892 (1995); *United States v. DeRewal,* 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal"); *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992) (holding that issues raised on direct appeal cannot be raised in a collateral attack absent a change in circumstances); *Cabrera v. United States,* 972 F.2d 23, 25 (2nd Cir. 1992) ("[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal."); *Walter v. United States,* 969 F.2d 814, 816 (9th Cir. 1992) ("[W]hen a federal prisoner presents a claim in a § 2255 petition that he has presented previously, the federal court retains the discretion to refuse to consider the claim on the basis that the prisoner is abusing the writ."); *Murchu v. United States,* 926 F.2d 50, 55 (1st Cir.), *cert. denied,* 502 U.S. 828 (1991) (noting that issues decided on direct appeal are not subject to being relitigated in a § 2255 motion); *United States v. Prichard,* 875 F.2d 789, 791 (10th Cir. 1989) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."); *United States v. Redd,* 759 F.2d 699, 701 (9th Cir. 1985)( "Redd raised this precise claim in his direct appeal, and this court expressly rejected it. Therefore, this claim cannot be the basis of a § 2255 motion."); *United States v. Greene,* 834 F.2d 1067, 1073 (D.C. Cir. 1987), *cert. denied,* 487 U.S. 1238 (1988) (holding that issues raised by defendant on direct appeal were inappropriate for collateral review). Here, there has been no change of circumstances or any intervening change in the law. Accordingly, defendant Dungy cannot relitigate this issue in this § 2255 action. Therefore, this part of defendant Dungy's motion is denied.

### b. *Alibi defense*

Defendant Dungy next asserts that his trial counsel was ineffective in failing to present an alibi defense grounded on the fact that he was incarcerated during a portion for the time period of the conspiracy's existence. An alibi instruction would not have been appropriate in this case. In Count I, defendant Dungy was charged with conspiring to distribute crack cocaine, to possess with intent to distribute crack cocaine, and to manufacture crack cocaine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851. The Eighth Circuit Court of Appeals has instructed that: "[s]ince a conspirator may be held liable for acts of his co-conspirators, he may not assert an alibi defense." *United States v. Agofsky*, 20 F.3d 866, 871 (8th Cir. 1994) (citing in turn *United States v. Anderson,* 654 F.2d 1264, 1270-71 (8th Cir. 1981), *cert. denied,* 454 U.S. 1127, 102 S. Ct. 978, 71 L. Ed. 2d 115 (1981), *and cert. denied,* 454 U.S. 1156, 102 S. Ct. 1030, 71 L. Ed. 2d 314 (1982)); *see United States v. Smoot*, 172 Fed. App'x 496, 499 (4th Cir. 2006) (holding that defendant charged with conspiracy to possess with intent to distribute cocaine was not entitled to alibi instruction where conspiracy allegedly lasted for four years and defendant's presence at scene of drug transaction was not a required element of the conspiracy); *United States v. Bryser,* 954 F.2d 79, 87 (2d Cir.) (holding that no alibi instruction necessary to a conspiracy charge because presence at scene not an element of crime), *cert. denied,* 504 U.S. 972 (1992); *United States v. Burse,* 531 F.2d 1151, 1153 (2d Cir. 1976) (same); *United States v. Lee,* 483 F.2d 968, 970 (5th Cir. 1973) ( "Since it was unnecessary for the government to have proved his presence, the alibi defense failed and no instruction concerning it was required."); *cf. United States v. Howe*, 538 F.3d 842, 855 (8th Cir. 2008) (holding that defendant's alibi that he was elsewhere at the time of kidnapping and robbery failed as a defense to the charge of conspiracy to commit kidnapping and robbery

where the prosecution did not allege that defendant actually kidnapped and robbed victim). Thus, the court concludes that defendant Dungy has not demonstrated that he was prejudiced by his counsel's failure to present an alibi defense at trial. Therefore, this part of defendant Dungy's motion is also denied.

### c.    *Juvenile bad acts evidence*

Defendant Dungy also contends that his trial counsel was ineffective because he failed to object to the admission of testimony concerning defendant Dungy's actions prior to 1994 when defendant Dungy was a juvenile in 1995. The court deems this issue waived because defendant Dungy has not asserted any legal authority or arguments in support of it in either his motion or his supporting memorandum.[4]   Moreover, because the time period of the charged conspiracy ran from January of 1992, when defendant Dungy was a juvenile, through February 23, 2001, evidence of defendant Dungy's juvenile actions, which took place during the pendency of the conspiracy, was relevant and admissible as part of the *res gestae* of the charged offense. *See United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) (holding that defendant's juvenile criminal convictions were admissible under theory of *res gestae*). Therefore, this part of defendant Dungy's motion is also denied.

### d.    *Failure to request buyer-seller jury instruction*

Defendant Dungy also claims that his trial counsel was ineffective for failing to file or request a buyer-seller jury instruction. The record in this case belies defendant Dungy's claim for his counsel sought, and the court agreed to add, buyer-seller language to the jury instructions in this case. As a result, the court added the requested "buyer-seller"

---

[4]The court notes that defendant Dungy does not identify in his motion precisely what specific juvenile bad acts evidence he asserts was inadmissible.

language to Final Jury Instruction No. 4, at the end of the penultimate paragraph of the explanation to element *one*. As amended, Final Jury Instruction No. 4 read in pertinent part:

> Similarly, a simple buyer-seller relationship does not establish an agreement to distribute a controlled substance; rather, the government must prove that the buyer and seller had an agreement to further distribute the controlled substance.

Final Jury Instruction No. 4 (Dkt. No. 79). Thus, defendant Dungy's counsel was not ineffective for failing to request a buyer-seller instruction because he, in fact, did so, and such an instruction was given in this case. Therefore, this part of defendant Dungy's motion is also denied.

### e. *Proof of the drug at center of the conspiracy*

Defendant Dungy further asserts that his trial counsel was ineffective in failing to object to the lack of proof that the drug that was the object of the conspiracy was crack cocaine. The record does not support such a claim. The prosecution's witnesses consistently testified that they obtained crack cocaine from defendant Dungy during the pendency of the conspiracy. Trial Tr. at 70, 73, 76, 77, 91, 92, 94, 97, 100, 109, 134-37, 154, 155, 171, 202, 222, 240, 241 and 243. In addition, two prosecution witnesses, Mark Shrivers and Jeremy Altman, testified to having watched defendant Dungy "cook" or manufacture crack cocaine. Trial Tr. at 137, 156, and 330. Given the weight of all the evidence in the case, the court concludes that defendant Dungy has not demonstrated that he was prejudiced by his counsel's failure to object to the lack of proof that the drug that was the object of the conspiracy was crack cocaine. Therefore, this part of defendant Dungy's motion is also denied.

15

### *f.* *Sentencing stipulation*

Defendant Dungy next contends that his sentencing counsel was ineffective in advising him to agree to the sentencing stipulation in which defendant Dungy agreed to accept a four point increase for his role in the conspiracy in order to avoid a mandatory life sentence based on an enhancement for defendant Dungy's two prior felony drug convictions. Defendant Dungy argues that his prior felony drug convictions occurred during the pendency of the conspiracy and therefore could not be used to enhance his sentence. Accordingly, defendant Dungy asserts that his counsel should not have advised him to accept the terms of the sentencing stipulation. A Presentence Investigation Report ("PSIR") on defendant Dungy was prepared for this case by a United States Probation Officer. In the PSIR, the probation officer calculated defendant Dungy's guideline range of 210 months to 262 months imprisonment based on a criminal history category IV and an offense level of 34. However, because the prosecution had filed two 21 U.S.C. § 851 notices of prior convictions, under defendant Dungy's circumstances, he faced a mandatory sentence of life imprisonment. In light of this situation, defendant Dungy's defense counsel urged defendant Dungy to sign the stipulation since "[a]t that time, this agreement seemed the best option available for defendant." Affidavit of R. Scott Rhinehart, Gov't Ex. 2 at 3. Indeed, the court indicated at the time of sentencing that the stipulated to sentence was in defendant Dungy's best interests, observing that:

> I spent a great deal of time on this sentencing. I read every case I could read. I read the cases the government cited. I read the cases your lawyer cited. I read some cases I found and that my law clerks found. I spent an extraordinary amount of time on the sentencing because it is my job to do so, and I wasn't relishing the fact of the likelihood of having to give you a mandatory minimum life sentence. So your lawyers did a good job of raising every issue they could, but I felt it was my

independent obligation to look at every nook and crany of
every possible issue to make sure that they were raised on your
behalf because I have the power to raise them on my own, and
I do that on occasion. And I spent an extra ordinary amount
of time on it. And I even got up at three o'clock this morning
because I couldn't sleep, and I spent literally from three
o'clock this morning till one o'clock this afternoon . .
.working on your case going back over every possible avenue
I could think of, tracking down every possible argument that
could be raised on your behalf. I didn't find any.

And I probably shouldn't be saying this, but I think you
made a very wise decision in accepting the sentencing
stipulation. I just want you to know that. You may–
obviously it's not easy to agree to a 360-month sentence. I
understand that. But given all of the legal issues in the case
and looking at everything as objectively as I can, I hope it's at
least somewhat reassuring for you to know you did the right
thing, and the government made substantial concessions in this
case which is somewhat unusual for our U.S. Attorney's
Office. But I'm pleased that they did, and I just wanted you
to understand that.

Sentencing Tr. at 8-9.

Considering the very real possibility that a mandatory life sentence faced defendant
Dungy at his sentencing, the court concludes that defense counsel's advice to defendant
Dungy that he accept the sentencing stipulation was a reasonable strategic choice made
after sufficient investigation of the law and relevant facts and one which clearly fell within
the wide range of reasonable professional assistance and thus did not constitute ineffective
assistance of counsel.

Even if the court were to assume, *arguendo*, that defendant Dungy's sentencing
counsel's performance was deficient, defendant Dungy cannot hurdle the second *Strickland*
prong, showing that he was prejudiced by his sentencing counsel's actions. The Eighth

17

Circuit Court of Appeals has held that where overt acts in furtherance of a conspiracy occur after the date of a previous conviction that that conviction may be considered "prior" for the purposes of applying a sentencing enhancement. *See United States v. Funchess*, 422 F.3d 698, 703 (8th Cir. 2005) (holding that district court was entitled to impose sentencing enhancement for defendant's prior state felony drug conviction where defendant committed overt acts in furtherance of conspiracy after the date of defendant's prior conviction), *cert. denied*, 126 S. Ct. 1452 (2006); *United States v. Titlbach*, 339 F.3d 692, 697 (8th Cir. 2003) (affirming the application of a prior conviction enhancement where the defendant committed an act in furtherance of a conspiracy after the date a prior conviction was finalized). The charged conspiracy in this case is alleged to have continued until February 23, 2001, over six years after the date of defendant Dungy's two January 17, 1995, Iowa convictions. Moreover, like the factual situations in *Funchess* and *Titlbach*, evidence exists in the record of a number of overt acts committed by defendant Dungy in furtherance of the charged conspiracy which occurred after January 17, 1995. Testimony was introduced at trial that defendant Dungy continued to distribute crack cocaine to the Shivers, Preston and Foy after January 17, 1995. Thus, the court concludes that defendant Dungy has not demonstrated that he was prejudiced by his counsel's advising him to agree to the sentencing stipulation. Therefore, this part of defendant Dungy's motion is also denied.

### g.    *Use of prior convictions*

Similarly, defendant Dungy asserts that his sentencing counsel was ineffective in not objecting to the use of his two prior drug convictions for criminal history points as well as for a § 851 enhancement since the convictions were relevant conduct in the conspiracy. For the reasons detailed above, under the Eighth Circuit Court of Appeals's decisions in *Funchess*, 422 F.3d at 703 and *Titlbach*, 339 F.3d at 697, the court could the use

defendant Dungy two prior drug convictions in determining his criminal history as well as for a § 851 enhancement since evidence exists in the record of a number of overt acts committed by defendant Dungy in furtherance of the charged conspiracy which occurred after the date of his convictions. Thus, the court concludes that defendant Dungy has not demonstrated that he was prejudiced by his counsel's failure to lodge an objection to the court's use of his two prior drug convictions to determine his criminal history as well as for a § 851 enhancement. Therefore, this part of defendant Dungy's motion is also denied.

### h.    Appellate counsel

Defendant Dungy asserts that his appellate counsel was ineffective in failing to pursue information regarding additional witnesses available to trial counsel and in not raising as an issue on appeal his trial counsel's failure to put up a vigorous defense. The court concludes that defendant Dungy has not demonstrated that he was prejudiced by his appellate counsel's alleged failings. Indeed, defendant Dungy did not address this issue in his brief in support of his motion. Therefore, this part of defendant Dungy's motion is also denied.

### 3.    Perjured testimony

Defendant Dungy also asserts that prosecution witness Jeremy Altman has recanted his testimony. Defendant Dungy further contends that Altman conspired to give perjured testimony against him. Defendant Dungy, however, has not indicated in either his motion or brief a specific claim based on Altman's alleged recantation. Moreover, defendant Dungy has not briefed the issue nor has defendant Dungy provided an affidavit or any other factual basis for these allegations. As a result, defendant Dungy has not identified what portion of Altman's testimony was allegedly false. The Eighth Circuit Court of Appeals has noted that recantations of testimony generally are to be viewed with suspicion. *See Wadlington v. United States*, 428 F.3d 779, 784 (8th Cir. 2005); *United States v.*

*Rouse*, 410 F.3d 683, 688 (8th Cir. 2005); *United States v. Provost,* 969 F.2d 617, 619 (8th Cir. 1992). Inherent in any recantation is the admission that the witness "either is lying now, was lying then, or lied both times." *Provost*, 969 F.2d at 620. More problematic is that to the extent that defendant Dungy is attempting to raise a free-standing claim of actual innocence, he cannot prevail. A freestanding claim of actual innocence, however, has never explicitly been recognized by the Supreme Court. *See House v. Bell*, 126 S. Ct. 2064, 2087 (2006); *Baker v. Yates*, 2007 WL 2156072 (S.D. Cal.) ("In practice, however, the Supreme Court has never explicitly held that a freestanding innocence claim is available during habeas review, even in a death penalty case."). In a noncapital case such as this, an assertion of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Whitby v. Dormire*, 2 Fed. App'x 645, at *1 (8th Cir. 2001); *Mansfield v. Dormire*, 202 F.3d 1018, 1023-24 (8th Cir. 2000). In *House*, the United States Supreme Court was presented with a freestanding claim of innocence, but it "decline[d] to resolve this issue." *House*, 126 S. Ct. at 2087. The Supreme Court did, however, conclude "that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *Id.* The Court also recognized, as it did in *Herrera*, that the standard for any freestanding innocence claim would be "'extraordinarily high.'" *Id.* (quoting *Herrera*, 506 U.S. at 417). But it did not explain what that standard would require, except that it would require more than the showing required to make a successful gateway innocence claim. *Id.* at 2087 ("The sequence of the Court's decisions in *Herrera* and *Schlup*–first leaving unresolved the status of freestanding claims and then establishing the gateway standard--implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*."). Even assuming that such a

freestanding claim could be raised, defendant Dungy has not met or even approached an "extraordinarily high" standard here by his mere wholly unsupported allegation of perjury. Therefore, this part of defendant Dungy's motion is also denied.

### D. Certificate Of Appealability

Defendant Dungy must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U .S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court determines that defendant Dungy's application does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); Fᴇᴅ. R. Aᴘᴘ. P. 22(b). As a result, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

### III.  CONCLUSION

Defendant Dungy's § 2255 motion is **denied**, and this matter is **dismissed in its entirety**.  Moreover, the court determines that the petition does not present questions of substance for appellate review.  *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, a certificate of appealability will not issue.

**IT IS SO ORDERED.**

**DATED** this 2nd day of February, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA