# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MONTREAIL DEAN DUNGY,<br><br>Defendant. | No. CR01-3038-MWB<br><br>**ORDER REGARDING DEFENDANT'S *PRO SE* MOTION TO RECONSIDER** |

_____

## *I. INTRODUCTION AND BACKGROUND*

This case is before me on defendant Montreail Dean Dungy's *pro se* motion for clarification (docket no. 216). In his motion, Dungy seeks clarification of my order of February 9, 2009, denying his claim that the prosecution presented perjured testimony at his trial. Dungy raised this claim in both his motion for new trial pursuant to Rule 33, as well as his motion to vacate sentence and judgment pursuant to 28 U.S.C. § 2255. He contends that I have more discretion to grant a new trial for newly discovered evidence than to vacate a conviction under § 2255, but did not analyze his claim under, in his view, this more discretionary standard. In essence, Dungy's motion is a motion to reconsider, and I will treat it as such.

## *II. LEGAL ANALYSIS*

Initially, I find that Dungy's motion is untimely, being filed years after the Eighth Circuit Court of Appeals denied his appeal of my order. The same considerations that justify limiting the time to appeal—such as judicial efficiency and the finality of criminal

sentences—also justify limiting the time to seek reconsideration here. Even if timely, Dungy's motion is denied on the merits. A district court does not have unfettered discretion to grant a motion for new trial based on newly discovered evidence. Rather, motions for new trial based on newly discovered evidence are subject to a "rigorous" standard because they are "disfavored." *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007); *accord United States v. Huggans*, 650 F.3d 1210, 1225 (8th Cir. 2011), *cert. denied*, 132 S. Ct. 1583 (2012); *United States v. Carlson*, 613 F.3d 813, 818 (8th Cir. 2010); *United States v. Hollow Horn*, 523 F.3d 882, 889 (8th Cir. 2008); *United States v. Dogskin*, 265 F.3d 682, 685 (8th Cir. 2001); *see United States v. Rubashkin*, 655 F.3d 849, 857 (8th Cir. 2011) (observing that such motions are "disfavored"); *United States v. Street*, 548 F.3d 618, 625 (8th Cir. 2008) (same); *United States v. Estabrook*, 774 F.3d 284, 291 (8th Cir. 1985). The Eighth Circuit Court of Appeals is hardly alone in disfavoring such motions. *See United States v. Scrushy*, 721 F.3d 1288, 1304 (11th Cir. 2013) ("'Motions for a new trial . . . are highly disfavored in the Eleventh Circuit and should be granted only with great caution.'") (quoting *United States v. Campa,* 459 F.3d 1121, 1151 (11th Cir. 2006); *United States v. Ebron*, 683 F.3d 105, 157 (5th Cir. 2012) (noting that motions for a new trial "based on newly discovered evidence are 'disfavored and reviewed with great caution.'") (quoting *United States v. Wall,* 389 F.3d 457, 467 (5th Cir. 2004) (internal quotation marks omitted); *United States v. Figueroa*, 421 Fed. App'x 23, 24 (2nd Cir. 2011) (noting that motions for a new trial based on newly discovered evidence are disfavored and should be granted "'only *in the most extraordinary circumstances*.") (quoting *United States v. Spencer,* 4 F.3d 115, 118 (2d Cir. 1993) (internal quotation marks omitted; emphasis in original); *United States v. Redcorn,* 528 F.3d 727, 743 (10th Cir. 2008) ("'A motion for a new trial based on newly discovered

2

evidence is generally disfavored and should be granted only with great caution.'") (quoting *United States v. Gwathney*, 465 F.3d 1133, 1143-44 (10th Cir. 2006); *United States v. Turns,* 198 F.3d 584, 586 (6th Cir. 2000) (observing that motions for new trial based on newly discovered evidence are "disfavored").

To obtain a new trial based on newly discovered evidence, a defendant must establish (1) the new evidence was discovered after trial; (2) the failure to discover it before trial was not attributable to a lack of due diligence; (3) the evidence was material and not merely cumulative or impeaching; and (4) the new evidence would likely produce an acquittal upon retrial. *See United States v. Stroud*, 673 F.3d 854, 863 (8th Cir. 2012); *United States v. Herbst*, 666 F.3d 504, 512 (8th Cir. 2012); *Rubashkin*, 655 F.3d at 857; *Huggans*, 650 F.3d at 1225; *United States v. Coplen*, 565 F.3d 1094, 1096 (8th Cir. 2009); *Baker*, 479 F.3d at 577. "To make a determination under this standard, the district court cannot view the [new evidence] in a vacuum; it must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial." *United States v. Kelly,* 539 F.3d 172, 189 (3d Cir. 2008). Moreover, at all times, a district court's discretion to grant a new trial is limited by the required presence of a miscarriage of justice. *See United States v. Campos,* 306 F.3d 577, 579 (8th Cir. 2002) ("Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand."); *see also United States v. Smith,* 487 F.3d 618, 621 (8th Cir. 2007) ("The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict [such] that a miscarriage of justice may have occurred." (quotations omitted)). With these requirements in mind, I review the allegedly newly discovered evidence Dungy contends warrants a new trial.

3

Dungy offers the affidavits of Brett Kamerud and his brother, Cory Kamerud, as well as the affidavit of Jeremy Altman. The Kameruds were each convicted, in this district, of conspiracy to distribute methamphetamine and possessing methamphetamine with intent to distribute. *See United States v. Kamerud*, 326 F.3d 1008, 1012 (8th Cir. 2003). They were each sentenced to 240 months in prison, to be followed by ten years of supervised release. *See id.* Brett avers that, while awaiting sentencing, he was jailed with Mark Shivers. Brett Kamerud's Aff. at ¶¶ 1-2. Mark Shivers had been a cooperating witness for the prosecution at Dungy's trial, and, at the time, was waiting to testify against another defendant, Robert Lee Pate. Brett swears that he had conversations with Mark which "consisted predominantly of MARK SHIVERS championing the fabrication of testimony to assist the government in its prosecution of others." Brett Kamerud's Aff. at ¶ 3. Brett further avers that he testified about these conversations as a defense witness in the case of *United States v. Robert Lee Pate*, CR01-3039-MWB, and that Pate was acquitted of the charges.[1] Brett Kamerud's Aff. at ¶¶ 8-9. Brett concludes by swearing, on "information and belief," that Mark Shivers "knowingly gave fabricated testimony" in Dungy's case. Brett Kamerud's Aff. at ¶ 10.

Corey Kamerud's affidavit largely mirrors his brother's, but the subject is Ira Shivers, Mark's brother. Ira was also a cooperating witness for the prosecution at Dungy's trial and, at the time. waiting to testify against Pate. Corey avers that he was jailed with Ira Shivers while Corey awaited sentencing. Corey Kamerud's Aff. at ¶ 2. Corey further avers that he had conversations with Ira which "consisted predominantly of

---

[1]Pate was indicted on August 21, 2001, approximately ten weeks before Dungy's trial, and charged with conspiracy to distribute and possess with intent to distribute crack cocaine. He went to trial on August 19, 2002.

IRA SHIVERS championing the knowingly fabrication [sic] of testimony to assist the government in its prosecution of others so as to receive favorable treatment from the government in the form of a recommended reduction of his [IRA SHIVERS] own sentence. . . ." Corey Kamerud's Aff. at ¶ 3. Corey also avers that he testified about these conversations as a defense witness in Pate's case, and that Pate was acquitted of the charges. Corey Kamerud's Aff. at ¶¶ 10-11. Corey concludes by swearing that he "is of the belief" that Ira "knowingly provided fabricated testimony" in Dungy's case. Corey Kamerud's Aff. at ¶ 12.

Dungy also offers the affidavit of Jeremy Altman, his cousin. Altman was a cooperating witness for the prosecution at Dungy's trial. In his affidavit, Altman recants his trial testimony, alleging that he was threatened and intimidated by unnamed law enforcement personnel.

With regard to the Kameruds' affidavits, their statements could be offered to impeach the Shivers. However, "a new trial is not warranted when, as here, the additional evidence would be merely impeaching." *Coplen*, 565 F.3d 1094, 1096; *see Herbst*, 666 F.3d at 512 ("To meet the materiality requirement, the newly discovered evidence cannot be merely cumulative or impeaching."); *United States v. Clay*, 618 F.3d 946, 952 (8th Cir. 2010) ("'[N]ewly discovered evidence which is merely impeaching normally cannot form the basis for a new trial.'") (quoting *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir. 1985)); *United States v. Johnson,* 450 F.3d 366, 372 (8th Cir. 2006) (recognizing that newly discovered evidence will not warrant a new trial if it is "merely cumulative or impeaching"); *United States v. Dogskin*, 265 F.3d 682, 687 (8th Cir. 2001) (impeachment testimony "rarely, if ever, justifies a new trial based on newly discovered evidence."). Moreover, this impeachment evidence is not likely to result in an acquittal. At most, the

Kameruds' testimony would cast some doubt on the veracity of only two of the prosecution's fourteen witnesses. The Shivers were not the only cooperating witnesses at Dungy's trial. In addition to them, Ricky Foy and Patrick Preston also testified. Both Foy and Preston testified that they bought crack cocaine from Dungy, and their testimony corroborated portions of the Shivers' testimony. The Shivers and Preston each testified that, when they wanted to buy drugs from Dungy, they would contact him, and Dungy would meet them at his or his aunt Sharon Altman's house. Foy testified that he purchased crack cocaine from Dungy at his aunt Sharon's house. Sharon Altman, in turn, testified that Dungy recently possessed a bag found at her house that contained a scale, a sizable quantity of cocaine, crack cocaine, and marijuana.[2] Thus, taken as a whole, I cannot find that the Kameruds' impeachment evidence would likely result in an acquittal. Thus, this portion of Dungy's motion is denied on the merits.

Finally, I turn to Jeremy Altman recantation of his testimony as a basis for a new trial. "Motions for a new trial based upon the recantation of a material witness are viewed with disfavor because '[t]he stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.'" *United States v. Seibel*, 712 F.3d 1229, 1237 (8th Cir. 2013) (quoting *United States v. Grey Bear*, 116 F.3d 349, 350 (8th cir. 1997)); *see United States v. Rouse,* 410 F.3d 1005, 1009 (8th Cir. 2005) ("'The stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.'"); *United States v. Papajohn,* 212 F.3d 1112, 1117 (8th Cir. 2000) ("Motions for a new trial based upon the alleged recantation of a material witness are viewed with disfavor in this circuit

---

[2] A search of Dungy's own residence yielded two scales.

and are difficult to win."), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36 (2004). New testimony by a recanting witness is inherently untrustworthy. "[W]here a witness makes subsequent statements directly contradicting earlier testimony the witness either is lying now, was lying then, or lied both times." *United States v. Provost,* 969 F.2d 617, 620 (8th Cir. 1992).

I find, given the other evidence presented at trial, Jeremy's statement is not credible, and would not likely produce an acquittal at a new trial. Jeremy was not the only witness that implicated Dungy in drug trafficking. Four other witnesses each testified about their buying drugs from Dungy: Mark Shivers, Ira Shivers, Ricky Foy, and Patrick Preston. As discussed above, the Shivers' testimony was corroborated, in part, by both Preston and Foy. Thus, even without Jeremy's testimony, sufficient evidence was presented to the jury to support a guilty verdict against Dungy. In addition, I find that Jeremy's recantation is not credible. Jeremy's trial testimony was corroborated by other evidence, in particular the testimony of his mother, Sharon, who testified to Dungy's recent possession of a bag found at her house that contained drugs and drug paraphernalia. Moreover, Jeremy's affidavit contains only vague accusations. His affidavit does not actually identify who threatened or intimidated him. Indeed, Jeremy's recantation completely lacks "[d]etails adding verisimilitude," that it may fairly be described as "fact free." *United States v. Torres-Ramirez,* 213 F.3d 978, 980 (7th Cir. 2000). In light of these facts, I find that it is extremely unlikely that Jeremy's recantation "will result in an acquittal upon retrial." *Baker,* 479 F.3d at 574 (internal quotations omitted). For that reason, this portion of Dungy's motion is also denied on the merits.

### III. CONCLUSION

Therefore, for the reasons discussed above, Dungy's *pro se* motion is denied.

IT IS SO ORDERED.

DATED this 2nd day of January, 2014.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA